**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD CARLEY, | ) | CASE NO:    1:06-CV-00922 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | NANCY A. VECCHIARELLI |
| STUART HUDSON, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |
| | ) | |

This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. Petitioner, Richard E. Carley, ("Carley"), challenges the constitutionality of his conviction in the case of *State v. Carley*, Case No. CR 97-355976.  Carley, *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 17, 2006 in the United States District Court for the Northern District of Ohio.  (Doc. No. 1.)  For the reasons set forth below, the Magistrate Judge recommends that the Petition (Doc. No. 1) be DENIED.

**I.  Procedural History**

**A.  Conviction and Sentence**

The September term of the Cuyahoga County Grand Jury indicted Carley on two counts of aggravated murder as defined by Ohio Revised Code § 2903.01(A) (murder committed with prior calculation or design), each with a one-year fire arm specification, a three-year firearm specification, a mass murder specification, and a felony murder specification (Counts 1 and 2);

two counts of aggravated murder as defined in Ohio Rev. Code § 2903.01(B) (felony murder), each with a one-year fire arm specification, a three-year firearm specification, a mass murder specification, and a felony murder specification (Counts 3 and 4); two counts of aggravated robbery as defined in Ohio Rev. Code § 2911.01, each with a one-year fire arm specification and a three-year firearm specification (Counts 5 and 6); and one count of obstructing justice as defined in Ohio Rev. Code § 2921.32 (Count 7).

At an arraignment held October 23, 1997, Carley pleaded not guilty.  (Doc. No. 18, Ex. 2.)  On February 25, 1998, before a three-judge panel and pursuant to a plea agreement, Carley changed his plea to guilty to aggravated murder with felony murder and mass murder specifications on Counts 3 and 4.  (Doc. No. 18, Ex. 3.)  The panel *nolled* the remaining counts and sentenced Carley to two concurrent terms of life imprisonment without parole until thirty years served.  (*Id*.)

On September 14, 2000, the Court of Appeals of Ohio reversed the judgment of the trial court and remanded the case for further proceedings on the ground that the trial court panel lacked jurisdiction to consider Carley's plea because Carley did not sign a waiver of his right to a jury trial as required by Ohio Rev. Code §§ 2945.05 - 2945.06.  (*Id*., Ex. 4.)

A jury trial was held; and on January 24, 2002, the jury found Carley guilty of aggravated murder with felony murder, mass murder, and three-year firearm specifications (Counts 1 and 2); guilty of aggravated murder with felony murder and mass murder specifications (Counts 3 and 4); and guilty of aggravated robbery with a three-year firearm specification (Counts 5 and 6). (Doc. No. 18, Ex. 5.)

On February 6, 2002, prior to the mitigation hearing, Carley entered into a plea

-2-

agreement pursuant to which he pleaded guilty to two counts of murder with three-year firearm specifications.  (Doc. No. 18., Ex. 6.)  The state agreed to eliminate the possibility of the death penalty by deleting the mass murder and felony murder specifications.  (Doc. No. 18., Ex. 49, Tr. at 2022.)  The plea agreement included an agreed sentence of two consecutive fifteen-year to life terms and a consecutive term of three years on the firearm specifications.  (Doc. No. 18, Ex. 49, Tr. at 2021-31, 2038-39.)  The Court sentenced Carley to the agreed term of thirty-three years to life.

**B.  Direct Appeal**

On March 12, 2002, Carley filed an appeal in the Court of Appeals of Ohio ("state appellate court"), raising the following assignments of error:

1.  Trial counsel was ineffective under the Sixth and Fourteenth Amendments of the U.S. Constitution and the appellant's guilty pleas was not knowingly and voluntarily made.

2.  Prosecutorial misconduct deprived appellant of a fair trial in violation of the Fourteenth Amendment.

(Doc. No. 18, Ex. 10.)  On April 15, 2004, the Court of Appeals affirmed the judgment of the trial court.

On May 24, 2004, Carley appealed to the Supreme Court of Ohio, raising the same assignments of error.  On September 1, 2004, the Supreme Court of Ohio denied Carley leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  (Doc. No. 18, Ex. 20.)

**C.  Application to Reopen Appeal**

On July 12, 2004, Carley filed an application to reopen his appeal pursuant to Ohio Appellate Rule 26(B), raising the following assignments of error:

-3-

1.   The appellant was denied the effective assistance of appellate counsel in violation of his Fourteenth Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution for counsel's failure to raise the issue that the trial court abused its discretion when it failed to dismiss his case for lack of speedy trial making his guilty plea involuntary.

2.   The appellant was denied the effective assistance of appellate counsel in violation of his Fourteenth Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution for counsel's failure to raise the issue that the trial court abused its discretion when sentencing appellant to consecutive sentences without giving adequate reasons for the sentence.

3.   The appellant was denied the effective assistance of appellate counsel in violation of his Fourteenth Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution for counsel's failure to raise the issue that the appellant's guilty plea was involuntary and unknowingly made because of jury misconduct.

(Doc. No. 18, Ex. 21.)  The state appellate court denied the application on the ground that

Carley's claims were barred by the doctrine of *res judicata*, and alternatively, that Carley's

claims lacked merit.  (Doc. No. 18, Ex. 23.)

On November 15, 2004, Carley filed a notice of appeal in the Supreme Court of Ohio,

raising the same claims he raised in his application to reopen.  (Doc. No. 18, Ex. 24, 25.)  The

Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional

question.  (Doc. No. 18, Ex. 27.)

**D.  Post Conviction Motions**

On April 26, 2005, in the Cuyahoga County Court of Common Pleas, Carley filed a

motion to vacate his sentence based on the Supreme Court's holding in *Blakely v. Washington*,

542 U.S. 296 (2004).  Carley's motion was summarily denied on April 28, 2005.  (Doc. No. 18,

Ex. 29.)  However, the court's denial was not journalized until May 10, 2006.  (*Id.*)  On May 9,

2005, the State filed a motion for summary judgment to dismiss Carley's motion to vacate his

-4-

sentence.  (Doc. No. 18, Ex. 33.)

On September 14, 2005, Carley filed a notice of appeal and motion for delayed appeal in the Court of Appeals of Ohio, appealing the May 10, 2005 denial of his motion to vacate his sentence.  (Doc. No. 18, Ex. 30, 31.)  On October 3, 2005, the Court of Appeals denied the motion for delayed appeal and *sua sponte* dismissed the appeal.  (Doc. No. 18, Ex. 32.)

Despite its May 10, 2005 journal entry denying Carley's motion to vacate his sentence, on November 17, 2005, the court summarily granted the state's summary judgment motion on Carley's motion to vacate his sentence.  (Doc. No. 18, Ex. 34.)  On December 7, 2005, Carley appealed the trial court's grant of the state's summary judgment motion.  (Doc. No. 18, Ex. 35, 36.)  Carley raised the following assignment of error:

> The trial court erred and violated appellant's due process rights under the fourteenth amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution when granting the state's motion for summary judgment after after appellant showed how his sentence was in violation of the mandates embodied in *Apprendi v. New Jersey*, 530 US. 466, and *Blakely v. Washington*, 124 S. Ct. 2531.

(Doc. No. 18, Ex. 36 at iii.)  The state filed a responsive brief as well as a motion to dismiss in which it argued that the November 17, 2005 journal entry granting the summary judgment motion did not extend the time for a timely appeal as it "simply reiterate[d] [the May 10, 2005] ruling."  (Doc. No. 18, Ex. 37, 38 at 4.)  The state appellate court referred the state's motion to dismiss to a panel hearing the case on its merits.  (Doc. No. 18, Ex. 39.)  On September 7, 2006, the panel dismissed the appeal.  (Doc. No. 18, Ex. 40.)

On September 15, 2006, Carley filed a motion for reconsideration, which the state appellate court summarily denied on November 17, 2006.  (Doc. No. 18, Ex. 41, 42.)

On October 23, 2006, Carley filed a notice of appeal in the Supreme Court of Ohio,

-5-

raising one proposition of law:

> The trial court violated appellant's due process rights under the fourteenth amendment of the United States Constitution and Article I Section 10 of the Ohio Constitution when failing to adhere to federal law and the mandates embodied in *Apprendi v. New Jersey*, 530 US. 466, and *Blakely v. Washington*, 124 S. Ct. 2531, when sentencing him to consecutive sentences.

(Doc. No. 18, Ex. 44 at 5.)  On January 24, 2006, the Supreme Court of Ohio denied the appeal and dismissed the appeal as not involving any substantial constitutional question.  (Doc. No. 18, Ex. 45.)

**E.  Federal Habeas Corpus Petition**

On April 17, 2006, Carley filed the instant Petition, asserting the following grounds for relief:

> **Ground One**: Trial counsel was ineffective under the Sixth and Fourteenth Amendments of the U.S. Constitution and the petitioner's guilty plea was not knowingly and voluntarily made.

> **Ground Two**: Prosecutorial misconduct deprived the petitioner of a fair trial in violation of the Fourteenth Amendment.

> **Ground Three**:  The petitioner was denied the effective assistance of appellate counsel in violation of his Fourteenth Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution for counsel's failure to raise the issue that the trial court abused its discretion when it failed to dismiss his case for lack of speedy trial making his guilty plea involuntary.

> **Ground Four**:  The petitioner was denied the effective assistance of appellate counsel in violation of his Fourteenth Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution for counsel's failure to raise the issue that the trial court abused its discretion when sentencing petitioner to consecutive sentences without giving adequate reasons for the sentence.

> **Ground Five**:  The petitioner was denied the effective assistance of appellate counsel in violation of his Fourteenth Amendment rights under the United States Constitution and Article I, Section 10 of the Ohio Constitution for counsel's failure to raise the issue that the petitioner's guilty plea was involuntary and

-6-

unknowingly made because of jury misconduct.

(Doc. No. 1.)  On the same date, Carley filed a motion to hold the petition in abeyance while he

exhausted his state court remedies with respect to his *Blakely* claim.  (Doc. No. 4.)  The Court

held the petition in abeyence until March 28, 2007.  (Doc. Nos. 6, 10.)  On April 25, 2007, the

Court granted Carley's motion to amend the petition by adding the following ground for relief:

> **Ground Six**: The petitioner's sentence is contrary to law and in violation of the
> Sixth and Fourteenth Amendments under the United States Constitution and
> Article I, Section 10 of the Ohio Constitution pursuant to the mandates embodied
> in the recent United States Supreme Court cases *Apprendi v. New Jersey*, 530 US.
> 466, and *Blakely v. Washington*, 124 S. Ct. 2531.

(Doc. No. 9, 15.)

Respondent filed an Answer on July 9, 2007 (Doc. No. 18) and Carley filed a Traverse on

August 31, 2007 (Doc. No. 21).  Shortly after filing the Traverse, Carley filed a second motion to

amend the petition.  (Doc. No. 22.)  On January 14, 2008, the Court granted the motion to the

extent Carley sought to make additional arguments in reply to Respondent's arguments and to

add an actual innocence claim, but denied the motion to the extent Carley sought to add a false

or coerced confession claim.  (Doc. No. 26.)  Carley did not file an additional claim.

## II.  Standard of Review

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA") because Carley filed his habeas petition after April 26, 1996, the effective

date of AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant

provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law can be determined only by examining the holdings of the United States Supreme Court, as opposed to dicta. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not required; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005) (quoting *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)). As the plain language of the statute indicates, the inquiry is limited to decisions by the Supreme Court. *Williams v. Taylor*, 529 U.S. at 412. However, a habeas court "[m]ay look to lower courts of appeals' decisions, not as binding precedent, but rather to inform the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established by the Supreme Court." *Foley v. Parker*, No. 04-5746, 2007 WL 845864, at *2 (6th Cir. March 22, 2007) (citing *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the

-8-

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  An incorrect state court decision may not be unreasonable under this standard. *Id.* at 410-11.  For this reason, a federal habeas court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, No. 03-2113, 2006 WL 68438, at *4 (6th Cir. Jan.10, 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998) ("[AEDPA] tells federal courts:  Hands off, unless the judgment in place is based on an error grave enough to be called unreasonable.").  The standard of review applied to the merits of a petition for a writ of habeas corpus, therefore, is a stringent one.

### III.  Procedural Default

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In this vein, the Supreme Court has held as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted, the court must conduct a

four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). A default also will be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

## IV. Analysis

### A. Grounds One and Two

#### 1. Ground One

In his first ground for relief, Carley claims that "trial counsel was ineffective under the Sixth and Fourteenth Amendments of the U.S. Constitution and the petitioner's guilty plea was not knowingly and voluntarily made." Carley argues that his counsel rendered ineffective assistance for the following reasons:

> (1) Walter Camino, an assistant Cuyahoga County Public Defender, was not Rule 20 certified to represent an indigent capital defendant; further counsel did not inform the petitioner or the court of his lack of certification required to represent capitally indicted indigent defendants; finally, counsel had not been Rule 20 certified for more than 10 years;

> (2) counsel failed to object to the phrase mass murder contained in the indictment,

-10-

used during closing arguments, contained in the jury instruction and the verdict forms when there is no statutory or other legal basis for the use of such prejudicial court house slang;

(3) counsel did not properly prepare for the mitigation phase of the trial before the trial actually commenced, to the prejudice of the petitioner;

(4) counsel did not seek or use the assistance of any psychological or psychiatric experts to explain why the petitioner 'falsely confessed' to the homicides while incarcerated; and

(5) counsel failed to recognize and argue that the petitioner's incarceration at the East Cleveland jail for more than 48 hours without being brought before a magistrate for a probable cause hearing if the charges rendered his confinement unconstitutional and his statement constitutionally deficient.

In his direct appeal before the state appellate court, Carley identified these same instances of alleged ineffective assistance of counsel in support if his argument that his plea was involuntary and unknowing. The state appellate court addressed Carley's claim as follows:

> In his first assignment of error, Carley argues his plea was invalid because of the various allegations of ineffective assistance of counsel. The issue before us is whether Carley waived these errors when he entered his plea after his jury trial, in which he was convicted, and before his sentence.

> The law in Ohio is "a plea of guilty following a trial and prior to sentencing effectively waives all appealable errors which may have occurred at trial unless such errors are shown to have precluded the defendant from voluntarily entering into his or her plea pursuant to the dictates of Crim. R. 11 and *Boykin v. Alabama* (1969), 395 U.S. 238, 243."

> The facts of this case are strikingly similar to [*State v. Kelley,* 57 Ohio St.3d 127 (Ohio 1991)]. After a jury convicted Kelly of murder with a three-year gun specification, but prior to sentencing, Kelly entered a guilty plea to the charge of involuntary manslaughter, without the gun specification. Included in the plea negotiation, Kelly agreed to forgo his right to appeal. After reviewing the plea, the trial court concluded Kelly willingly waived the right. Kelly subsequently appealed and this court reversed and remanded. The State appealed to the Ohio Supreme Court. The Ohio Supreme Court reversed this court and remanded to the trial court for execution of sentence. In doing so, the court observed "we do not foreclose an appellate court from reviewing other proceedings which affirmatively show that a defendant was improperly coerced into submitting his

plea.  However, we note under App. R. 12(A), the court of appeals' inquiry is limited to the record on appeal and cannot address issues which were previously waived by the  defendant."  [*Id.* at 130.]

Consequently, "when a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann v. Richardson* (1970), 397 U.S. 759." [*State v. Spates*, 64 Ohio St.3d 269 (Ohio 1992) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).]

In *Spates*, the Ohio Supreme Court made it clear that our inquiry should entail a review of the record to ensure that Crim. R. 11 was followed by the trial court upon submission of the defendant's guilty plea; the Supreme Court of Ohio pointed out that this was its holding in *State v. Kelly*. [*State v. Spates*, 64 Ohio St.3d at 272.]

Accordingly, we have reviewed the record in Carley's case and concluded the trial court complied with Crim.R. 11, and Carley has failed to establish affirmatively that he was coerced or induced into making his plea.  Additionally, he has not shown that any of his claimed errors induced or coerced him into entering the plea.  The effect of Carley's plea was to waive all errors that may have taken place at his trial.

While the state appellate court correctly stated the rule that a defendant "may attack the voluntary and intelligent character of the guilty plea by showing the advice he received from counsel was not within the standards set forth in *McMann v. Richardson*," it did not actually identify the standard.  As discussed more fully below, the Supreme Court has held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."  *Hill v. Lockhart*, 474 U.S. at 58 (1985).  Rather than identifying the standard and applying it to Carley's claim, the state appellate court proceeded to discuss, and relied upon, the Supreme Court of Ohio case, *State v.Kelley*, which it deemed analogous to Carley's case.

-12-

*State v. Kelley* was factually similar to Carley's case in that the defendant, Kelley, plead guilty to involuntary manslaughter after a jury found him guilty of murder with a firearm specification. *State v. Kelly*,[1] No. 55905, 1989 Ohio App. LEXIS 5103, *1 (Ohio Ct. Ap.. November 2, 1989). The state agreed to allow Kelley to plead guilty to involuntary manslaughter and dismissed the firearm specification in exchange for Kelley's waiver of his appellate rights. *Id.* at *1.  Kelley appealed his conviction.  In doing so, however, he raised only assignments of error related to his murder trial.  Kelley raised no alleged errors pertaining to the guilty plea upon which he was convicted.  *Id*. at *5, *7.  The state appellate court reversed Kelley's conviction based on the guilty plea and remanded, concluding that "the trial court's overruling [Kelley's] motions at trial, or the fact that the jury had found him guilty of murder, or a combination of both, induced [Kelley] to plead guilty to voluntary manslaughter." *Id*. at 10.  The court determined that two possible appealable issues occurred at trial and that the prosecutor "purposely offered the appellant the plea in order to avoid a possible successful appeal . . . from the jury's guilty verdict." *Id*. at *11-16.  The Supreme Court of Ohio reversed, holding that Kelley waived all his constitutional claims related to the trial when he plead guilty "unless such errors are shown to have precluded the defendant from voluntarily entering into his or her plea." *State v. Kelley*, 57 Ohio St. 127, Paragraph 1 of the Syllabus.

The distinguishing aspect of *Kelley* is that the defendant did not challenge the validity of his guilty plea on the basis of ineffective assistance of counsel or on any other basis.  The holding in *Kelley* does not address a challenge to a guilty plea based on ineffective assistance of

---

[1]The defendant's name is spelled "Kelly" in the Court of Appeals of Ohio opinion and "Kelley" in the Supreme Court of Ohio opinion.  Although it is not clear which spelling is correct, the Court adopts the spelling used by the Supreme Court of Ohio.

counsel and therefore, is not relevant to Carley's claim. (Doc. No. 18, Ex. 15 at 6.) Moreover, *State v. Kelley* is an Ohio case and the state appellate court relied on it, rather than federal law, to address Carley's federal constitutional claim. As the state appellate court did not conduct an analysis of Carley's claim under federal constitutional law, the Court must review the claim *de novo*.

As set forth above, Carley identifies five instances of counsel's conduct that he claims constitute ineffective assistance. Three of the alleged deficiencies – counsel's failure to object to the use of the phrase mass murder at trial, to call an expert witness to explain why Carley would confess, and to move to suppress Carley's confession– pertain to counsel's performance at the guilt phase of the trial, one alleged deficiency relates to counsel's failure to prepare for the mitigation phase, and one alleged deficiency, counsel's alleged lack of certification, relates to counsel's performance in general.

The Constitution requires that a defendant's plea be made knowingly, intelligently, and voluntarily. *Bousley v. United States*, 523 U.S. 614, 618 (1998); *Brady v. United States*, 397 U.S. 742, 750 (1970). Ineffective assistance of counsel may prevent a defendant from entering a knowing and voluntary plea. *Tollett v. Henderson*, 411 U.S. 285, 266-67 (1973). Where a guilty plea is entered upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Hill v. Lockhart*, the Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. at 58 (1985). Under *Strickland*, a petitioner must demonstrate the following:

1) "counsel's representation fell below an objective standard of reasonableness" and 2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).  In the guilty plea context, to satisfy the second prong, a petitioner "must show that there is a reasonable probability that but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial."  *Hill* v. *Lockhart,* 474 U.S. at 58-59.

Although Carley's claim is stated as a challenge to his guilty plea based on ineffective assistance of counsel and, therefore, appears to call for the application of *Strickland* as stated in *Hill*, that standard cannot be applied to Carley's claim.  In examining the specific allegations of Carley's claim, it becomes clear that his claim is not the type of challenge to a guilty plea contemplated by *Hill*.  The *Hill* Court stated that "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  *Hill*, 474 U.S. at 58.  Thus, the *Hill* Court contemplated only cases in which the voluntariness of the plea is based on counsel's erroneous or less than competent advice as to whether a defendant should plead guilty.[2]

With respect to the alleged trial errors of counsel, Carley does not allege that the errors – counsel's failure to object to the use of the phrase "mass murder," to use an expert to explain why Carley would confess to murders he did not commit, and to move to suppress the confession– influenced counsel's advice that Carley should enter into the plea agreement after

---

[2]In *Hill*, both the petitioner's claim and the two examples discussed by the Court involved
circumstances where counsel's ineffectiveness was related to counsel's recommendation
to plead guilty.  *Hill,* 474 U.S. at 59-60.

-15-

trial.  Carley entirely fails to explain the connection between the alleged trial errors committed by counsel and his decision to plead guilty and waive his rights based on counsel's advice.  He simply alleges that counsel committed the trial errors and concludes, without explanation, that his plea was not voluntary.  These allegations are insufficient to support a conclusion that Carley's plea was not voluntary based on ineffective assistance of counsel.

With respect to counsel's alleged failure to prepare for the mitigation hearing, Carley does not challenge the validity of his plea based on a claim that he relied on erroneous or incompetent advice provided by his attorney.  Carley does not claim that had his counsel been prepared for the mitigation phase of trial, he would have found favorable mitigation evidence, and therefore, would not have advised Carley to plead guilty.  Nor does he identify, with any specificity, what his counsel should have done, but did not do, in preparation for the mitigation hearing.  Carley claims that he pleaded guilty because he felt he had no choice.  After alleging that his attorney failed to timely and adequately prepare for the mitigation hearing, Carley describes his decision to plead guilty as follows:

> [U]nder these circumstances, the petitioner accepted the plea bargain in order to save his live.  However, a plea bargain under these conditions can hardly be called voluntary.  When faced with the option of a mitigation phase with unprepared counsel or accepting a plea bargain that guaranteed a life sentence, there is no viable option.  One must accept the plea bargain and then fight on appeal.

(Doc. No. 1 at 13.)  Thus, rather than claiming that he relied on counsel's incompetent advice, Carley claims that he believed his counsel was unprepared and chose to plead guilty to avoid going through with the mitigation phase assisted by incompetent counsel.

Carley cannot claim that his plea was unknowing and involuntary based on ineffective assistance of counsel while at the same time admitting that he did not rely on counsel's advice to

-16-

plead guilty.  If he believed *at the time* that his counsel was incompetent, his remedy was not to

plead guilty and "fight on appeal," but to inform the court that his counsel was unprepared.

Before the trial court accepted Carley's plea, the court conducted a plea colloquy and found that

Carley knowingly, intelligently, and voluntarily pleaded guilty.  (Doc. No. 18, Ex. 49, Transcript

at 2025-2031.)  The court informed Carley of his trial rights, including the right to counsel, and

Carley stated he understood those rights.  (*Id*. at 2027-28.)  When the court asked if anyone had

threatened or coerced him into making the plea, Carley answered, "No."  (Id. at 2028.)  When

the court asked Carley whether he understood that by pleading guilty, he was waiving his trial

rights, Carley answered, "Yes."  (*Id.*)  Carley has not alleged or made any showing that he

informed the court that his counsel was not prepared for the mitigation phase or that his plea was

based on his belief that he had "no viable option" but to plead guilty.  On this record, Carley's

plea was voluntary, knowing and intelligent.

Carley has failed to establish that his plea was involuntary based on the ineffective

assistance of counsel or that it was coerced.  Accordingly, Carley's first ground for relief lacks

merit.

### 2.  Ground Two

In his second ground for relief, Carley claims that "[p]rosecutorial misconduct deprived

[him] of Due Process under the Fourteenth Amendment."  Carley argues that the use of the term

"mass murder" in the indictment and the state's closing argument was so prejudicial that it

deprived him of a fair trial.  The state appellate court correctly found that it did not need to

address this claim because it found that Carley waived his trial rights.  (Doc. No. 18, Ex. 15 at

9.)  As discussed above, before entering his guilty plea, Carley stated on the record that he

-17-

understood that by pleading guilty, he was waiving his trial rights.

The state appellate court correctly concluded that Carley waived his prosecutorial misconduct claim when he pleaded guilty. Accordingly, Carley's second ground for relief lacks merit.

**B. Grounds Three, Four, and Five**

Carley has procedurally defaulted his third, fourth, and fifth grounds for relief, in which he claims that his appellate counsel provided ineffective assistance because he failed to raise issues on appeal related to speedy trial rights, sentencing, and jury misconduct. Carley raised these claims for the first time in his application for reopening his direct appeal pursuant to Ohio App. R. 26(B). In denying the application, the Court of Appeals of Ohio concluded the claims were barred by the doctrine of *res judicata*. The relevant portion of the opinion states as follows:

> The doctrine of res judicata prohibits this court from reopening the original appeal. Errors of law that were either raised or could have been raised through a direct appeal may be barred from further review vis-a-vis the doctrine of res judicata. See, generally, *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 1204. The Supreme Court of Ohio has further established that a claim for ineffective assistance of appellate counsel may be barred by the doctrine of res judicata unless circumstances render the application of the doctrine unjust. *State v. Murnahan* (1992), 63 Ohio St.2d 60, 584 N.E.2d 1204.

> Herein, Carley filed an appeal with the Supreme Court of Ohio which denied his request and dismissed the appeal. Because the issues of ineffective assistance of appellate counsel or the substantive issues listed in the application for reopening were raised or could have been raised, res judicata bars re-litigation of these matters. We further find that the application of res judicata would not be unjust.

(Doc. No. 18, Ex. 23 at 2.)

The Sixth Circuit has "consistently held that Ohio's doctrine of *res judicata* is an adequate and independent ground justifying default." *Carter v. Mitchell*, 443 F.3d 517, 538 (6th

-18-

Cir. 2006). Although the state appellate court concluded that Carley's claims were barred by the doctrine of *res judicata*, it also conducted a substantive review of Carley's claims and concluded that Carley "fail[ed] to establish that his appellate counsel was ineffective." (*Id*. at 3.) Thus, the state appellate court based its decision on alternate grounds. That it did so does not save Carley's claims from being procedurally defaulted, as it is well-settled that when the last reasoned state court decision rests on both a procedural default and an alternative ruling on the merits, a federal district court is not required to reach the merits of the habeas claim. *Carter v. Mitchell*, 443 F.3d at 538; *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (citing *Harris v. Reed* , 489 U.S. 255, 264, n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." (emphasis in original))).

Because the state appellate court's denial of Carley's application for reopening was based on the ground that Carley's claims were barred by *res judicata*, the first three *Maupin* factors are satisfied. The only remaining issue is whether Carley has demonstrated cause and prejudice. He has not done so. Carley does not argue that cause and prejudice exist to excuse the procedural default. Rather, he makes a conclusory assertion that he did not commit procedural default because he followed the procedure set forth in Ohio App. Rule 26(B) for filing an application for reopening and that Respondent's "*res judicata* defense has no merit." (See Doc. No. 21 at 5.)

In a final effort to excuse his procedural default, Carley asserts in a vague and conclusory manner that he is actually innocent. (Doc. No. 21 at 6; Doc. No. 22 at 2.) The fundamental

-19-

miscarriage of justice exception may be satisfied by submitting evidence showing that a constitutional violation has lead to the conviction of one who is actually innocent. *Dretke v. Haley*, 541 U.S. 386, 393 (2004). Carley has submitted no evidence that he is actually innocent. Although Carley argues that his confession was coerced, he provides no evidence of actual innocence. Further, as discussed in Section A.1., above, after being advised of his rights and after being asked whether he was being coerced into pleading guilty, Carley answered in the negative and proceeded to enter a guilty plea.

As Carley has not submitted evidence demonstrating actual innocence, and has failed to show cause and prejudice to excuse the procedural default of his ineffective assistance of appellate counsel claims, the claims are procedurally barred. Therefore, the Court should dismiss Grounds Three, Four, and Five.

## C. Ground Six

In his sixth ground for relief, Carley claims that his sentence is unconstitutional pursuant to the Supreme Court's holding in *Blakely v. Washington*. Respondent argues that the claim has been procedurally defaulted and, alternatively, lacks merit.

### 1. Carley's *Blakely* Claim is Not Procedurally Defaulted

Respondent argues that Carley procedurally defaulted his *Blakely* claim when he failed to file a timely appeal from the trial court's May 10, 2005 denial of his post-conviction motion challenging his sentence.

After failing to file a timely appeal from the trial court's May 10, 2005 denial of his motion to vacate his sentence based on *Blakely*, Carley filed a motion for a delayed appeal, which the state appellate court summarily denied. Under Ohio law, a delayed appeal is not

-20-

available in civil proceedings.  *See* Ohio Rule of Appellate Procedure 5(A).  The Supreme Court

of Ohio has specifically held that "a delayed appeal pursuant to App. R. 5(A) is not available in

the appeal of a post-conviction relief determination [and] that post-conviction relief proceedings

will be governed by the Ohio Rules of Appellate Procedure as applicable to civil actions."  *State*

*v. Nichols*, 11 Ohio St. 3d 40, 43 (Ohio 1984).  Thus, because Carley did not timely file an

appeal from the trial court's denial of his post-conviction motion and Ohio does not permit

delayed appeals from post-conviction relief determinations, the first *Maupin* factor is met as

there is a state procedural rule applicable to Carley's claim.  The second factor is satisfied as the

state appellate court actually enforced the state procedural rule when it summarily denied

Carley's motion for a delayed appeal.  Although the state appellate court did not explain its

reasons for denying the motion for delayed appeal, this Court may presume that the state court

would not have ignored its own procedural rule disallowing delayed appeals from post-

conviction proceedings.  *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).

The third *Maupin* factor, whether the state procedural rule is an adequate and

independent state ground, is also satisfied.  Although there appears to be no Sixth Circuit case

law on point, Ohio App. R. 5(A)'s inapplicability to civil cases, and specifically, post-conviction

relief proceedings, is firmly established and regularly followed by Ohio courts.[3]   *See, e.g., State*

---

[3]The Sixth Circuit has held that "Ohio's enforcement of the time provisions for filing an
appeal under Ohio's Appellate Rule 5(A) does not constitute an adequate and independent
state ground to preclude federal habeas corpus relief."  *Shahan v. Jeffries*, Case No. 2:06-
160, 2007 U.S. Dist. LEXIS 17827, *12-13 (S.D. Ohio February 20, 2007) (citing *Deitz
v. Money*, 391 F.3d 804, 810-811 (6th Cir. 2004)).  This holding is not applicable in the
context of post-conviction relief proceedings.  In *Deitz*, the Sixth Circuit's holding was
based on the fact that Ohio App. R. 5(A) fails to "specify the criteria the courts should
use in determining whether to grant a delayed appeal" and that, as a consequence, the
decision whether to grant a motion for leave to appeal pursuant to Rule 5(A) is "solely
within the discretion of the appellate court."  *Deitz*, 391 F.3d at 810.  The Sixth Circuit

-21-

*v. Williams*, No. 06AP-842, 2006 Ohio 5415, *3 (Ohio Ct. App. October 17, 2006) ("Because post-conviction proceedings are civil in nature, App.R. 5(A) may not be used to seek leave from the denial of a post-conviction action where the time for an appeal as of right as provided in App.R. 4 has passed."); *State v. Johnson*, Case No. 2007-T-0092, 2007 Ohio App. LEXIS 5500, *1 (Ohio Ct. App. October 15, 2007) ("[T]he Supreme Court of Ohio has specifically held that App.R. 5(A) is not available on appeals regarding a post-conviction relief determination."); *Nichols*, 11 Ohio St. 3d at 43.

As the first three *Maupin* factors are satisfied, Carley's procedural default may be excused if he can show cause and prejudice or that a fundamental miscarriage of justice will occur if his claim is barred. Carley does not make a cause and prejudice argument to excuse his default.[4] Rather, he claims that he is actually innocent. As discussed in Section B, supra, Carley has submitted no evidence that he is actually innocent. Accordingly, his procedural default cannot be excused on this basis.

Although Carley appears to have procedurally defaulted his *Blakely* claim, that default

---

concluded that "a rule that grants such discretion to the courts is not 'firmly established and regularly followed' so as to be adequate within the meaning of *Maupin*." *Id.* at 811. The rationale underlying the Sixth Circuit's holding in *Deitz* is not applicable where the state appellate court denies a motion for delayed appeal filed in an appeal from a trial court's determination of a post-conviction motion because Ohio App. Rule 5(A) clearly does not permit delayed appeals in civil proceedings. Thus, the state court's have no discretion in determining whether to grant or deny motions for delayed appeals in this context.

[4]Although Carley does not assert cause for his procedural default, in his motion for delayed appeal, Carley argued that "the trial court failed to timely send him a copy of the final decision in his case" until May 2005. Even assuming the trial court failed to timely send Carley a copy of the decision, Carley did not file the motion for a delayed appeal until September 14, 2005 and fails to explain the delay of several months.

-22-

was remedied by the state appellate court's subsequent merit review of Carley's timely appeal of the trial court's grant of the state's summary judgment motion.[5]  As the state appellate court heard the appeal on the merits, Carley's *Blakely* claim is not procedurally defaulted.

### 2.  Carley's *Blakely* Claim Lacks Merit

Carley alleges that his sentence violates the Sixth Amendment pursuant to the holdings of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), and *Blakely v. Washington*, 542 U.S. 296, 303-304 (2004).  Carley's claim lacks merit because Carley was sentenced pursuant to an agreed sentence and, in light of his voluntary, knowing, and intelligent waiver of his appellate rights, Carley cannot now challenge that sentence.

In *Apprendi*, the United States Supreme Court held that "other than the fact of a prior conviction, any fact that increased the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  In *Blakely*, the Court clarified that for *Apprendi* purposes, the "maximum sentence" to which a court may sentence a defendant is the maximum sentence the court may impose solely on the basis of a prior conviction, facts reflected in the jury verdict, or facts admitted by the defendant.  *Blakely*, 542 U.S. at 303.  That is, the court may not enhance a defendant's sentence on the basis of judicial findings of fact other than notice of a prior conviction.  In *State v. Foster*, the Supreme Court of Ohio held that certain provisions of Ohio's sentencing statutes, including provisions that governed the imposition of consecutive sentences, required judicial fact-finding

---

[5]After the state filed a motion to dismiss, the state appellate court referred the motion to "the panel hearing the case on its merits."  (Doc. No. 18, Ex. 39.)  In light of this language and the state appellate court's subsequent dismissal of the appeal without an explicit statement indicating the grounds for dismissal, this Court cannot conclude the appeal was denied on procedural grounds.

and, thus, violated *Blakely*. *State v. Foster*, 845 N.E.2d 470, 494 (Ohio 2006).

Carley contends that the trial court's imposition of consecutive sentences violated

*Blakely*. However, before the trial judge sentenced Carley, he found that Carley agreed to the

term as set forth in the plea agreement:

> The Court further finds that the State and the defendant have agreed as a
> condition of the defendant's guilty plea that the defendant be sentenced to 15
> years to life plus three years on each of the murder counts, with each count to be
> served consecutively, except for the gun specifications, which shall be served
> concurrently based upon the concept of merger, for an aggregate total of 33 years
> to life.

(Doc. No. 18, Ex. 49, Transcript at 2038.) The trial judge then sentenced Carley to the agreed

term as stated in the plea agreement.

The Supreme Court of Ohio has held that when a trial court sentences a defendant

pursuant to an agreed sentence, the sentencing judge need not independently justify the sentence

by making factual findings. *State v. Porterfield*, 829 N.E.2d 690 (Ohio 2005).[6] *Blakely* applies

---

[6]In *Porterfield*, the state appellate court reversed the defendant's sentence based on the
trial court's failure to articulate findings, and reasons for those findings, for imposing
consecutive sentences. The Supreme Court of Ohio reversed, reasoning as follows:

> Porterfield's sentence was entered pursuant to a plea bargain in
> which Porterfield agreed to the precise sentence which was
> imposed. A sentence imposed upon a defendant is not subject to
> review if the sentence was authorized by law, was recommended
> jointly by him and the prosecution, and is imposed by a sentencing
> judge. R.C. 2953.08(D). Pursuant to R.C. 2953.08(D),
> Porterfield's sentence is not subject to review. The Ohio General
> Assembly intended a jointly agreed-upon sentence to be protected
> from review precisely because the parties agreed that the sentence
> is appropriate. Once a defendant stipulates that a particular
> sentence is justified, the sentencing judge no longer needs to
> independently justify the sentence.

*State v. Porterfield*, 829 N.E.2d at 694.

-24-

where a judge makes findings of fact statutorily required for the imposition of the sentence. Because there is no requirement that findings be made by a court when sentencing a defendant pursuant to an agreed sentence, *Blakely* is inapplicable.  As Carley was sentenced pursuant to the agreed sentence, his *Blakely* claim is without merit.

Notably, after ordering that Carley be sentenced to the thirty-three year to life term, the trial court proceeded to make findings of fact to justify the sentence.  The Court stated as follows:

> In addition, the Court requires the defendant to serve the prison terms consecutively because the Court expressly finds that a consecutive sentence is necessary to protect the public from future crime and to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and that the harm caused by the multiple offenses was so great and unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.

> The Court finds that these requirements are satisfied because the defendant in this matter murdered two individuals . . . with a firearm at close range, with prior calculation and design, dispatching one victim with four shots to the head and the other with two shots to the head.

> ***

> Due to the fact that two human beings lives were taken by the defendant in cold blood, as part of a plan to rob them, the Court finds that the sentences in this case must be served consecutively.

> Moreover, due to the fact that the offender has not been previously incarcerated, the Court  has expressly considered the minimum sentence in this case . . . and has expressly rejected it because it would demean the seriousness of the defendant's crimes and would not adequately protect the public from future crime by the offender or others.

(Doc. No. 18, Ex. 49, Transcript at 2039-40.)  Although the trial judge made these findings, he was not required to do so under Ohio's sentencing laws and the validity of Carley's sentence was not dependent on those findings.  Accordingly, the trial court's findings do not change the

-25-

conclusion that *Blakely* is inapplicable to Carley's sentence.

Moreover, when Carley agreed to the sentence of thirty-three years to life as part of his plea bargain, he waived any appeal as to his sentence. Before Carley pleaded guilty, the trial court asked Carley: "Do you understand that you are waiving any appeal rights with regard to this plea, and with regard to any prior motions you filed before the Court in this case?" Carley replied, "Yes." When Carley waived his appeal rights, he waived his right to appeal his sentence imposed as part of the plea agreement.

For the foregoing reasons, Carley's sixth ground for relief lacks merit and should be denied.

### V. Conclusion

For the reasons stated above, the Magistrate Judge recommends that Carley's petition for a writ of habeas corpus should be DENIED.

/s/ *Nancy A. Vecchiarelli*
United States Magistrate Judge

DATE: April 15, 2008

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

-26-